UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NICOLLE FOSTER,<br><br>    Plaintiff<br><br>v.<br><br>CREDIT ONE BANK, N.A.,<br><br>    Defendant | Case No.: 2:21-cv-00680-APG-VCF<br><br>**Order Granting Credit One Bank's Motion for Summary Judgment**<br><br>[ECF No. 43] |

Nicolle Foster was an employee at Credit One Bank, N.A. (Credit One) from 2007 until she was fired in December 2018. She sues Credit One for discrimination under the Americans with Disabilities Act (ADA), retaliation under the ADA, and interference with rights under the Family and Medical Leave Act (FMLA). Credit One moves for summary judgment on all claims, which I grant. Even viewing the evidence in the light most favorable to Foster, she does not establish prima facie cases of ADA discrimination or retaliation. Even if she does, Credit One articulated that it fired Foster for a nondiscriminatory reason because she violated company policy by using slurs to refer to another employee. Foster fails to present evidence raising a genuine dispute that Credit One's reason for termination was pretextual for disability discrimination or retaliation. Foster also does not raise a genuine dispute that Credit One's actions toward her were willful, so her FMLA claims are barred by the two-year statute of limitations.

**I.  BACKGROUND**

Foster joined Credit One as a Collection Representative in 2007. ECF No. 43-3 at 6-7. In 2016, Allen Mason became her supervisor. *Id.* at 55. According to Foster, Mason harassed her by belittling her work and disciplining her for minor mistakes, which prevented her from

receiving performance bonuses. ECF Nos. 43-3 at 29; 46-2 at 3.  Foster believes that Mason harassed her because he "used to be [her] competition" for bonus incentives as top employees at Credit One. ECF Nos. 43-3 at 28; 46-2 at 2.  Foster offers no other reasons for the harassment. *See* ECF No. 43-3 at 30.

Foster began seeing a therapist to deal with the stress from working under Mason. ECF No. 46-2 at 3.  She experienced difficulty sleeping, weight loss, and an impact on her relationship with her mother. *Id.*  The therapist diagnosed Foster with anxiety and severe depression, prescribed her medication, and recommended that she take medical leave from work. ECF Nos. 46-2 at 2-3; 46-6 at 7-8.

On June 19, 2018, Foster requested intermittent FMLA leave from Credit One, which Credit One approved through December 30, 2018. ECF No. 43-10 at 2-3.  Around this time, Foster also asked Credit One to change her manager. ECF No. 43-3 at 55-56.  Foster took a few weeks of FMLA leave before returning to work in early August 2018. *Id.* at 13-14.  Her therapist cleared her to return to work at that time. ECF No. 43-14.  When Foster returned, she was supervised by a new manager, Terrance Taylor. ECF No. 43-3 at 10-11.  However, Mason still worked the same shift and on the same floor as Foster and would talk to Foster even though he no longer supervised her. *Id.* at 15, 24-25.

In December 2018, Mason filled in as Foster's temporary manager while Taylor was on vacation. ECF No. 46-2 at 4.  This caused Foster's anxiety to spike. ECF No. 46-10 at 8.  She took a few days of intermittent FMLA leave during this time, which she reported to Mason. ECF No. 43-3 at 37-39.  While Foster was out, a colleague at Credit One, Rosinya Williams, called Foster and asked if Foster was going to make her full 80 hours this pay period. *Id.* at 33-37. Foster perceived the call as "weird." *Id.* at 36.  She believes Mason and Williams are friends, and

the call happened while Mason was filling in as Foster's manager, so Foster surmises that Mason told Williams about her FMLA leave. *Id.* at 34-36; ECF No. 46-2 at 5-6.

When Foster returned from her few days of FMLA leave around December 14, 2018, Taylor told her that her FMLA leave had ended and that she would need to make up the hours she missed. ECF No. 46-2 at 5. Foster spoke with Assistant Vice President of Human Resources Vera Yanez-Tourigny, relayed what Taylor had said about her FMLA ending, and asked Yanez-Tourigny if that was true. *Id.* Yanez-Tourigny responded that Foster still had FMLA leave and that she would speak with Taylor. *Id.*

Either that same day or the next, Taylor apologized to Foster, confirmed that Foster still had FMLA leave, and noted that Foster's pay for those days of leave would be restored in the next pay period, because the present pay period's hours had already been submitted. ECF Nos. 43-3 at 20; 46-2 at 5-6. Credit One's policy for FMLA leave was that an employee was required to use available paid sick leave or vacation leave before going on unpaid status. ECF Nos. 43-10 at 3; 46-8 at 2. Credit One paid Foster for her FMLA leave on her next paycheck, which arrived after Foster was terminated. ECF No. 46-2 at 6. Foster believes that Mason "decided not to pay [her]" for the FMLA leave she took in December 2018. ECF No. 43-3 at 17; *see also* ECF No. 46-2 at 6.

On December 18, 2018, another Assistant Vice President of Human Resources, Megan Lago, "was notified" that Foster called Mason racial and homophobic slurs in front of her coworkers. ECF No. 43-18 at 3. Foster was also reported to have said that "she was going to get Mr. Mason fired for discussing her personal information and blamed him for 'messing with her bonus.'" *Id.* Credit One promptly suspended Foster pending an investigation. *Id.* Lago interviewed Foster, Williams, and three employees, including the two employees (Ebony White

and David Tillman) who claimed to have heard Foster using the slurs. *Id.; see also* ECF No. 46-10 at 10-16. White and Tillman confirmed to Lago that Foster used the slurs. ECF Nos. 43-18 at 3; 46-10 at 12-14. Williams informed Lago that she never discussed Foster's FMLA status or leave with Mason. ECF Nos. 43-18 at 3; 46-10 at 16. Credit One determined that Foster violated company policy and fired her. ECF No. 43-18 at 3. Lago, along with a Senior Vice President of Human Resources and two Vice Presidents of Collections, were involved in the termination decision. ECF No. 46-14 at 4. Mason, Taylor, and Yanez-Tourigny were not. *Id.* Foster does not know who made the decision to fire her. ECF No. 43-3 at 32.

Foster maintains that she did not say the slurs and that she was not even in the lunchroom where White and Tillman claimed the incident happened. ECF No. 46-2 at 7-8. Foster believes that Mason "set [her] up to be fired." ECF No. 46-2 at 8.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. ADA Discrimination Claim

It is unlawful for an employer to "discriminate against a qualified individual on the basis of disability" in terminating an employee. 42 U.S.C. § 12112(a). The parties agree that ADA discrimination cases are analyzed using the three-step burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See* ECF Nos. 43 at 11; 46 at 22. Under the *McDonnell Douglas* framework, a plaintiff must first present a prima facie case of discrimination by establishing that she: (1) is a disabled person within the meaning of the statute; (2) is a qualified individual with a disability; and (3) suffered an adverse employment action because of her disability. *Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir. 1996). If the plaintiff presents a prima facie case of discrimination, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the termination. *See McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden shifts back to the plaintiff to show that the provided reason for termination was merely a pretext for discrimination. *Id.* at 804.

Credit One contends that Foster does not present a prima facie case of discrimination because she is not disabled and there is no causal link between her termination and her disability. Credit One does not challenge that Foster was qualified.

#### 1. *Disability*

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(1)(a). A "major life activity" includes work and non-work activities such as sleeping and interpersonal

relationships. *See McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1233-34 (9th Cir. 1999). I will assume, without deciding, that a reasonable jury could find that Foster was disabled as defined by the ADA because she had been diagnosed with anxiety and depression by a therapist; her sleep and her relationship with her mother were impacted; and being temporarily managed by Mason in December 2018 caused her anxiety to spike.

### 2. Causation

The third element of a prima facie case requires that the plaintiff suffer an adverse employment action because of her disability. The plaintiff "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019). Credit One contends that there is no causal link between Foster's disability and her termination. Foster responds that causation can be inferred because she was fired within a week of complaining about missing pay while she was on FMLA leave.

Though I assume without deciding that Foster was disabled, no reasonable jury could find that she was terminated because of her disability. Foster points only to the fact that she was fired "less than one week after she complained" about the missing pay from her few days of FMLA leave. ECF No. 46 at 24. But this fact is relevant only to the retaliation claims, which I discuss below. In her deposition, Foster testified that she did not believe Credit One used her medical condition to terminate her. ECF No. 43-3 at 31-32. She also provided no facts that support the contention that she was fired because of her medical condition. *See id.* at 33. In her declaration, Foster confirmed that she "[does] not believe that she was fired because of [her] disability." ECF No. 46-2 at 8. Finally, Credit One allowed Foster to take weeks of medical leave based on her disability between June and August 2018, after which she returned to work. Foster fails to show

6

a genuine issue of material fact that she was terminated because of her disability, and therefore fails to present a prima facie case of discrimination.

### 3. *Legitimate, Nondiscriminatory Reason*

For the sake of completeness, I will continue the analysis assuming that a reasonable jury could find that Foster made a prima facie case of discrimination. The burden of production then shifts to Credit One to articulate a legitimate, nondiscriminatory reason for firing Foster. *McDonnell Douglas*, 411 U.S. at 802. "In evaluating a legitimate nondiscriminatory reason, the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, legitimate reasons in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013) (quotations omitted). Credit One contends it fired Foster for using slurs in violation of company policy, based on its investigation of the alleged incident. A reasonable jury could find that Credit One has provided a legitimate, nondiscriminatory reason for terminating Foster.

### 4. *Pretext*

The third step of the *McDonnell Douglas* framework shifts the burden back to the plaintiff to show that the employer's articulated reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (quotation omitted). Although Foster may rely on circumstantial evidence to show pretext, such evidence "must be both specific and substantial." *Id.*

Foster argues Credit One's reason for firing her was pretextual because White and Tillman's allegations are false. Foster denies that she used the slurs and states that she does not socialize in the lunchroom where the incident allegedly occurred. Foster also contends that Credit One knew the allegations were false because of an inconsistency in its termination file. White and Tillman's written statements about the incident, which are contained in Foster's termination file, appear to be addressed to Mason. ECF No. 46-10 at 4, 5. But Yanez-Tourigny testified at the state unemployment hearing that White and Tillman's written statements were provided directly to Human Resources, not to Mason. ECF No. 43-13 at 4. Although I must draw reasonable inferences from the evidence in Foster's favor, I need not draw unreasonable ones. A reasonable jury could not conclude that Credit One knew the allegations against Foster were false simply because White and Tillman first told Mason about them. Even if White and Tillman initially reported the incident to Mason, Lago interviewed them and they repeated the claims. No reasonable jury could find that Credit One was specifically trying to cover up unlawful bias against Foster based on her disability merely because Yanez-Tourigny stated that White and Tillman's statements were made directly to Human Resources. Foster fails to raise a genuine dispute that Credit One's reason for termination was pretextual for disability discrimination. Therefore, I grant summary judgment in Credit One's favor on this claim.

**B.  ADA Retaliation Claim**

Employers may not retaliate against employees who have opposed an act made unlawful by the ADA. 42 U.S.C. § 12203(a). As with ADA discrimination claims, the *McDonnell Douglas* burden-shifting framework applies to ADA retaliation claims. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). The plaintiff must first make out a prima facie case of

ADA retaliation by showing (1) the plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) a causal link between the two. *Id.*

Credit One contends that Foster did not engage in a protected activity. Alternatively, it argues that there is no causal link between Foster's protected activity and her termination, and that the evidence precludes a finding that Foster was terminated for any reason other than her violation of company policy. ECF No. 43 at 17.

### 1. Protected Activity

"Pursuing one's rights under the ADA constitutes a protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Nondiscriminatory pay is a right under the ADA. 42 U.S.C. § 12112(a). I assume without deciding that Foster engaged in protected activity when she complained to Human Resources about not receiving pay for her medical leave.[1]

### 2. Causation

As with an ADA discrimination claim, to satisfy the causation element of a prima facie ADA retaliation claim, a plaintiff must show "but for" causation. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). Causation can be inferred from the timing between the protected activity and the adverse employment action. *See, e.g., Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). But temporal proximity must be considered in light of the surrounding circumstances and within "the totality of the facts." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003).

---

[1] In her opposition, Foster rests her ADA retaliation claim entirely on the "protected activity" of her "object[ing] to Mason docking her three days' pay." ECF No. 46 at 26. Foster's complaint does not clearly allege that her complaint about this missing pay is the basis for her ADA retaliation claim. *See* ECF No. 1-2 at 7. However, Credit One does not contend that it did not have fair notice of the basis of this claim, so I consider this claim on its merits.

9

Foster contends that the causal link in her retaliation claim is that Mason, who Foster believes chose not to pay her for the medical leave, is also the person "who concocted the false accusation to get [Foster] fired."[2] ECF No. 46 at 26. Foster also points to the fact that less than a week passed between her complaint about the missing pay and her termination. The short time between the two events weighs in favor of finding a genuine dispute regarding causation, but temporal proximity must be considered in context. There is no evidence that Mason knew Foster complained to Human Resources about the missing pay, which breaks Foster's causal chain. Moreover, upon receiving Foster's complaint about missing pay, Credit One remedied it as soon as practicable and paid Foster for her medical leave even after it terminated her. Based on the totality of the facts, no reasonable jury could find a causal link between Foster's complaint about missing pay and her termination. In other words, no reasonable jury could find that, but for Foster's complaint about the missing pay, Credit One would not have fired her. Therefore, Foster fails to present a prima facie case of ADA retaliation.

### 3. *Pretext*

Even if I assume that Foster presented a prima facie case, she must still show that Credit One's proffered reason for firing her was pretextual. Foster contends that pretext is shown because Credit One's "human resources department was complicit in the lie," referring to her belief that she was falsely accused of using slurs. ECF No. 46 at 26. This contention is again

---

[2] The "retaliation" by Credit One rests on Foster's uncorroborated belief that Mason "set [Foster] up to be fired" after she complained about the missing pay. ECF No. 46-2 at 8. To the extent that Foster is trying to argue that Mason's bias is imputed to Credit One (also called "subordinate bias liability" or "cat's paw liability"), the facts do not support it. *See Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007) (biased subordinate's retaliatory motive will be imputed to the employer if he influenced, affected, or was involved in the adverse employment decision). Even if White and Tillman addressed their initial statements to Mason, there is no evidence that Mason influenced, affected, or was involved in the outcome of Credit One's investigation.

based on the inconsistency between Yanez-Tourigny's testimony at the state unemployment hearing and the face of White and Tillman's written statements about the incident, as discussed above. A jury could not reasonably infer from this inconsistency that Credit One's explanation is unworthy of credence and is pretext for retaliation where Credit One immediately acknowledged Foster was correct and remedied her missing pay. Therefore, I grant summary judgment in Credit One's favor on this claim.

### C. FMLA Claims

Under the FMLA, employees have the right to take up to twelve weeks of leave per year for certain family and medical related reasons and to be restored to their same or an equivalent position when they return to work. 29 U.S.C. §§ 2612(a), 2614(a). FMLA leave is generally unpaid, but employers may require employees to use available paid leave when taking FMLA leave. 29 C.F.R. § 825.207(a). Employers may not discriminate against employees on FMLA leave "in the administration of their paid leave policies." *Id.*

The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see also Xin Liu v. Amway Corp.* 347 F.3d 1125, 1133 n.7 (9th Cir. 2003). Inflicting negative consequences on an employee because she has used FMLA leave is considered FMLA interference under § 2615(a)(1). *Xin Liu*, 347 F.3d at 1136. An employer violates § 2615(a)(1) if it considers an employee's exercise of FMLA rights "as a negative factor in an employment decision." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125. The Ninth Circuit does not apply the *McDonnell Douglas* burden-shifting framework when analyzing FMLA claims under § 2615(a)(1). *Id.* Rather, the plaintiff proves her claim "by a preponderance of the evidence … by using either direct or circumstantial evidence, or both." *Id.*

11

A separate provision of the FMLA prohibits retaliation. It is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice" protected by the FMLA. 29 U.S.C. § 2615(a)(2). Even if an individual is mistaken as to her belief about her FMLA rights, she is still protected if she reasonably believes the activity she opposes is unlawful. 29 C.F.R. § 825.220(e). The Ninth Circuit has not decided whether the *McDonnell Douglas* framework should be applied to such claims under § 2615(a)(2). *Bachelder*, 259 F.3d at 1125 n.11. An alternative would be to follow the same approach as a claim under § 2615(a)(1).

The FMLA generally has a two-year limitation period, but it extends to three years if the employer's violation was "willful." 29 U.S.C. §§ 2617(c)(1)-(2). "Willful" violations occur when the employer knows or shows reckless disregard for whether its conduct violated the FMLA. *Olson v. United States*, 980 F.3d 1334, 1339 (9th Cir. 2020). Willfulness is a higher standard than just knowing that the FMLA "was in the picture." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988). The parties agree that the two-year limitation period bars Foster's claims unless she shows that Credit One violated the FMLA willfully.[3] ECF Nos. 43 at 17; 46 at 18.

### 1. *Interference Claim*

Credit One argues that there is no evidence it willfully interfered with Foster's FMLA rights, nor is there evidence it considered Foster's use of FMLA leave as a negative factor in terminating her. Foster responds that Credit One's failure to pay her for her FMLA leave was willful interference with her FMLA rights because it was Credit One's policy for employees to

---

[3] Foster was fired by Credit One on December 21, 2018. She filed a complaint in state court on March 12, 2021, obviously more than two years after her termination. ECF No. 1-2 at 2.

12

use paid time to cover FMLA leave and because Credit One knew that it was wrong in docking her pay.

I assume without deciding that Foster was entitled to paid leave under the FMLA and Credit One's policies.[4]  However, Credit One resolved the missing pay issue within a day after it was brought to its attention, and Foster received the missing pay in her next paycheck because the current pay period's hours had already been submitted.  Based on these facts, a reasonable jury could not find that Credit One willfully interfered with or denied Foster's right to paid leave. Therefore, the two-year limitation period bars this claim.[5]

### 2.  *Retaliation Claim*

Foster's complaint did not plead an FMLA retaliation claim under § 2615(a)(2). ECF No. 1-2 at 8-9.  But in her opposition to summary judgment, she contends that Credit One unlawfully retaliated against her when it fired her for complaining about her missing pay. ECF No. 46 at 16-19.  Foster's alleged chain of causation is that (1) Mason chose not to pay Foster for taking

---

[4] Credit One does not argue until its reply brief that the FMLA does not entitle employees to paid leave, though it had notice that the missing pay was part of Foster's FMLA interference claim. ECF Nos. 47 at 9; 1-2 at 8.  It is also not clear that Credit One is correct, because FMLA regulations allow employers to require employees to use paid leave when on FMLA and prohibit employers from discriminating "against employees on FMLA leave in the administration of their paid leave policies." 29 C.F.R. § 825.207(a).  I need not address these issues because, regardless, Foster's FMLA claims are untimely.

[5] Foster's complaint also alleges that Credit One interfered with her FMLA rights by firing her "in direct response for her taking a medical leave of absence due to anxiety and depression." ECF No. 1-2 at 8.  But Foster appears to have dropped the claim that her termination was FMLA interference. ECF No. 46 at 15-16.  Even if she continues to make this claim, there are no material facts to support it.  Foster points to no evidence that suggests Credit One willfully used her taking FMLA leave as a negative factor in her termination.  Credit One fired Foster after it investigated her alleged use of slurs and concluded that Foster violated company policy. Additionally, Foster testified that she did not believe Credit One used her time off on FMLA to terminate her. ECF No. 43-3 at 31-32.  In her declaration, Foster clarified that she believes that Mason "set [her] up to be fired" after she complained about the missing pay, and "this … is different from being fired because of FMLA." ECF No. 46-2 at 8.

FMLA leave, (2) Foster complained about her missing pay to Human Resources, (3) Mason coordinated with White and Tillman to falsely allege that Foster used slurs, and (4) Credit One fired her even though it knew the allegations were false. ECF No. 46 at 17-20.

In its reply, Credit One argues that Foster's "attempt to recast her clearly pled FMLA Interference claim as an additional and distinct claim for FMLA Retaliation is of no effect." ECF No. 47 at 9. Credit One contends that this claim fails because of the two-year limitation period. Credit One also argues that the denial of paid leave is not unlawful under the FMLA, Foster did not "complain" about being denied paid leave, and there is no evidence connecting her complaint about the missing pay to her termination.

Assuming that Foster properly pleaded an FMLA retaliation claim,[6] she must show a genuine issue of material fact that Credit One willfully violated the FMLA's retaliation statute in order to survive the two-year limitation period. *See* 29 U.S.C. §§ 2617(c)(1)-(2). A jury could find that Foster reasonably believed she engaged in protected opposition by complaining about her missing pay, because Credit One required employees to first use paid leave while on FMLA leave, and this policy was on Foster's FMLA approval documents provided by Credit One. ECF

---

[6] A plaintiff cannot change the factual basis of her claim at summary judgment. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006). Foster contends that the Ninth Circuit allows the court to "make the determination as to the proper FMLA subsection under which the plaintiff should proceed, regardless of the precise designation used in the complaint." ECF No. 46 at 15. The Ninth Circuit allows this where the claims are misidentified. *See Xin Liu*, 347 F.3d at 1134 n.8. But Foster did not misidentify her claims. She pleaded only a claim under § 2615(a)(1), based on the allegation that Credit One "fired [her] in direct response for her taking a medical leave of absence due to anxiety and depression." ECF No. 1-2 at 8. This was correctly identified as an FMLA interference claim, not an FMLA retaliation claim. A claim arising from § 2615(a)(2) requires that an employee "oppose" the employer's conduct. *See Xin Liu*, 347 F.3d at 1133 n.7 (emphasis omitted). Foster's FLMA claim does not allege that she opposed anything or that Credit One retaliated against her for complaining. ECF No. 1-2 at 8-9. Therefore, it appears that Foster did not provide fair notice to Credit One that she was asserting an FMLA retaliation claim based on her complaint about missing pay.

No. 43-10 at 3. However, a reasonable jury could not find that Credit One willfully conspired with Mason to fire Foster for opposing her missing pay. There is no evidence that Mason knew about or had an opportunity to find out about Foster's complaint to Human Resources about the missing pay. And even if Mason knew about Foster's complaint, a reasonable jury could not impute his retaliatory motive to Credit One. Human Resources independently interviewed White and Tillman, and Mason was not involved in the termination decision. Regardless of whether I apply the *McDonnell Douglas* framework or a preponderance of the evidence approach, the result is that there is insufficient evidence for a jury to find that Credit One willfully violated the FMLA by terminating Foster for complaining about her missing pay. Therefore, even if Foster's retaliation claim was properly pleaded, it is barred by the FMLA's statute of limitations.

### III.  CONCLUSION

I THEREFORE ORDER that the defendant's motion for summary judgment **(ECF No. 43) is GRANTED**. The clerk of court is instructed to enter judgment in favor of defendant Credit One Bank, N.A. and against plaintiff Nicolle Foster, and to close this case.

DATED this 28th day of September, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE